No. 16-20553

*In The*

# United States Court of Appeals

*for the*

# Fifth Circuit

―――――――――――――●―――――――――――――

MICHELLE SPENCER,

*Plaintiff-Appellant,*

v.

KELSEY SEYBOLD CLINIC;
KS MANAGEMENT SERVICES, L.L.P.,

*Defendants-Appellees*

―――――――――――――――――

*On Appeal from the United States District Court for the Southern District of
Texas, Houston, The Honorable Stephen W. Smith, U.S. Magistrate Judge
USDC No.: 4:14-CV-274*

## BRIEF FOR PLAINTIFF-APPELLANT

DARRELL WILLIAM JORDAN, JR.
DARRELL JORDAN & ASSOCIATES
1305 Prairie Street
Suite 200
Houston, Texas 77002
(713) 296-9422
Email: dwjordanjr@gmail.com

ALEX L. DAVIS, III, ESQ.
3102 Maple Avenue
Suite 400
Dallas, Texas 75201
(214) 722-6965
Email: adavis@a-dfirm.com

*Attorneys for Plaintiff-Appellant,
Michelle Spencer*

CP  COUNSEL PRESS ● (888) 700-3226

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

<u>Plaintiff-Appellants</u>

Michelle Spencer

<u>Plaintiff-Appellants Attorney</u>

Alex L. Davis III

<u>Defendant – Appellee</u>

KS Management Services, LLC, d/b/a Kelsey-Seybold Clinic

<u>Defendant – Appellee Attorney</u>

Juliann H. Panagos

State Bar No. 06861100
Federal ID No. 9083
1401 McKinney Street, Suite 1700
Houston, TX  77010
Telephone:  713-658-2323
Facsimile:   713-658-1921
Email: jpanagos@craincaton.com

<u>/s/ Alex L. Davis III</u>

Alex L. Davis III
*Attorney for Plaintiff-Appellant*
Texas State Bar No. 24043294
3102 Maple Avenue, Suite 400
Dallas, Texas   75201
adavis@a-dfirm.com – E-mail
(214)450-6447 – Phone
(214)481-1271 – Facsimile

i

## STATEMENT REGARDING ORAL ARGUMENT

Michelle Spencer respectfully suggests that oral argument would benefit the panel.  The testimony and evidence presented at trial clearly contradicts the conclusion of law laid out by the trial court.  Accordingly, the Court would benefit from oral arguments to clarify the record of the trial.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................v

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................1

STATEMENT OF THE CASE ...............................................................1

INTRODUCTION ..................................................................................2

STATEMENT OF FACTS .....................................................................3

    1.    Ms. Spencer had a disability within the meaning of the ADA .............3

    2.    Ms. Spencer was entitled to reasonable accommodations ...................4

    3.    Ms. Spencer is a qualified individual under the ADA .........................5

    4.    Kelsey did have a legitimate reason for terminating Spencer...............5

    5.    Procedural History................................................................6

SUMMARY OF THE ARGUMENTS .....................................................7

ARGUMENT .........................................................................................7

    1.    Did Ms. Spencer Established a *Prima Facie* Case of Discrimination? ....................................................................7

        A.    Standard of Review................................................................7

        B.    Ms. Spencer has a Disability within the Meaning of the ADA ................................................................................8

        C.    Ms. Spencer is qualified for the job............................................9

        D.    Kelsey made its adverse employment decision because of Plaintiff's disability ............................................................11

    2.    Was Kelsey's Reasons for Terminating Ms. Spencer just a Pretext? ...............................................................................14

        A.    Standard of Review................................................................14

        B.    Kelsey Produced no Legitimate Nondiscriminatory Reason for Ms. Spencer's Termination .....................................14

iii

3.    Did Kelsey Fail to Accommodate Ms. Spencer? ................................16

     A.    Standard of Review.................................................................16

     B.    Kelsey Provided no Accommodations for Ms. Spencer...........17

CONCLUSION AND PRAYER ...........................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adkins v. Kaspar*,
    393 F.3d 559 (5th Cir. 2004) ..............................................................8, 14, 16

*Chiari v. City of League City*,
    920 F.2d 311 (5th Cir. 1991) ....................................................................9, 11

*Cutrea v. Bd. Of Supervisors of La. St. Univ.*,
    429 F.3d 108 (5th Cir. 2005) .........................................................................20

*Daughtry v. City of El Paso*,
    56 F.3d 695 (5th Cir. 1995) .............................................................................9

*EEOC v. Chevron Phillips Chem. Co.*,
    570 F.3d 606 (5th Cir. 2009) .......................................................15, 16, 17, 20

*EEOC v. DYNMCDERMOTT Petroleum Operations Co.*,
    537 F. App'x 437 (5th Cir. 2013) ..................................................................14

*EEOC v. LHC Grp., Inc.*,
    773 F.3d 688 (5th Cir. 2014) ....................................................................5, 14

*Kemp v. Holder*,
    610 F.3d 231 (5th Cir. 2010) ..........................................................................4

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S. Ct. 1817 (1973) .......................................................11, 13

*Mooney v. Aramco Services, Co.*,
    54 F.3d 1207 (5th Cir. 1995) .........................................................................11

*Neely v. PSEG Tex., Ltd. P'ship*,
    735 F.3d 242 (5th Cir. 2013) ...........................................................................8

*Pinkerton v. Spellings*,
    529 F.3d 513 (5th Cir. 2008) .........................................................................14

*Rizzo v. Children's World Learning Centers, Inc.*,
    84 F.3d 758 (5th Cir. 1996) .......................................................................9, 11

*Rogers v. Int'l Marines Terminal, Inc.*,
    87 F.3d 755 (5th Cir. 1996) .............................................................................8

*Taylor v. Principal Fin. Group*,
    93 F.3d 155 (5th Cir. 1996) ...........................................................................17

*Turco v. Hoechst Celanese Corp*.,
    101 F.3d 1090 (5th Cir. 1996) ...................................................................5, 9

*United States v. Hernandez*,
    647 F.3d 216 (5th Cir. Tex. 2011) ................................................................7

## Statutes & Other Authorities:

29 U.S.C. § 791 ...........................................................................................14

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 1343 ...........................................................................................1

42 U.S.C. § 12101 ...............................................................................1, 11, 12

42 U.S.C. § 12102(1) ...................................................................................4, 8

42 U.S.C. § 12111 .......................................................................................4, 5

42 U.S.C. § 12111(8) ...................................................................................5, 9

42 U.S.C. § 12111(9)(b) ..................................................................................4

42 U.S.C. § 12112(b)(5)(A) ............................................................................14

29 C.F.R. § 1630.2(i)(1) ...................................................................................8

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Michelle Spencer ("Ms. Spencer"), is suing under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. Therefore, the district court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has appellate jurisdiction pursuant to 28 U.S. C. §1291 because this appeal is taken from the district court's final judgment entered on July 19, 2016, disposing of the entire action and all claims and counterclaims.[1] Ms. Spencer timely filed a notice of appeal on August 17, 2016.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did Ms. Spencer establishes a *prima facie* showing of discrimination?

2. Was the Kelsey's Reasons for Terminating Ms. Spencer just a Pretext?

3. Did Kelsey fail to accommodate Ms. Spencer?

## STATEMENT OF THE CASE

Ms. Spencer filed suit against KS Management Services, LLC, d/b/a Kelsey-Seybold Clinic (hereinafter "Kelsey") asserting that she was wrongfully terminated in violation of in violation of the ADA, 42 U.S.C. § 12101. Magistrate Judge Steven Smith held a bench trial from February 9 through 10, 2016. On July 19, 2016, the

---

[1] ROA. RE-15

district court issued a memorandum finding in favor of Kelsey.[2]  Following post-trial motions, the district court entered a final judgment in favor Kelsey and against Ms. Spencer denying all claims raised by Ms. Spencer.[3]

## INTRODUCTION

Ms. Spencer was an employee of Kelsey as a Medical Assistant (MA-I) from November 15, 1999 until Kelsey wrongfully terminated her in August of 2010.  Ms. Spencer worked in Kelsey's pulmonary department.[4]  In 2003, Ms. Spencer was diagnosed with schizophrenia and a dispersive disorder which resulted in her taking medical leave for approximately three (3) months to seek treatment.[5]  Ms. Spencer returned to work for Kelsey in 2004 as a full-time employee at the position of MA-I.

Ms. Spencer's course of treatment for her condition left her with short-term memory loss and problems with retaining new information.  This impairment affected Ms. Spencer's learning abilities substantially.  However, Ms. Spencer still maintained a work performance level that met or exceeded Kelsey's expectations.[6]

---

[2] ROA. RE - 7
[3] ROA. RE-15
[4] ROA.677-736 (Testimony of Ms. Spencer); ROA. 604-659 (testimony of David Miller)
[5] ROA. 660-676 (testimony of Jorge Raichman); ROA.677-736 (Testimony of Michelle Spencer)
[6] ROA. 911-922 (Plaintiff's Exhibits 7-8); ROA.933

In 2005, Kelsey began to eliminate its MA-I position in favor of using Certified Medical Assistants (MA-II) in its primary care departments, including the department in which Ms. Spencer worked. Because the MA-II administered medications and vaccines to patients, Ms. Spencer was required to complete training and pass the MA-II exam. Passing required Ms. Spencer to get a score of 90 percent or higher.[7]

Ms. Spencer requested accommodations for this exam due to her disability.[8] Kelsey admits that such accommodations were not made for Ms. Spencer even though she was entitled to them.[9] Ms. Spencer was unable to obtain a score of 90 percent or higher as required to transition to a MA-II. On August 2, 2010, Kelsey unlawfully terminated Ms. Spencer without offering her a chance to move to another MA-I position in the company.[10]

## STATEMENT OF FACTS

### 1.  Ms. Spencer had a disability within the meaning of the ADA.

Disability under the ADA is defined as: a) a physical or mental impairment that substantially limits one or more major life activities of such individual; b) a

---

[7] ROA. 604-659 (testimony of David Miller)
[8] ROA.677-736 (Testimony of Ms. Spencer); ROA. 905-910 (PL. Exhibits 1-6)
[9] ROA. 604-659 (testimony of David Miller)
[10] *Id.*

record of such impairment; or c) being regarded as having such impairment.   42

U.S.C. §12102(1)*; Kemp v. Holder*, 610 F.3d 231 (5th Cir. 2010).[11]   The district

court found that Ms. Spencer suffered from a disability that falls under the definition

of disability as defined by the ADA.[12]

### 2. __Ms. Spencer was entitled to reasonable accommodations.__

Kelsey could have accommodated Ms. Spencer by a) restructuring her job; b)

part-time work schedules, and c) reassignment to a vacant position.   42 U.S.C.

§12111 (9)(b).[13]   Testimonies of Kelsey's employees show that there were vacant

positions for which Ms. Spencer is a good fit.[14]

---

[11] 42 U.S.C. §12102(1)- **(1)**  Disability. The term "disability" means, with respect to
an individual-- **(A)**  a physical or mental impairment that substantially limits one or
more major life activities of such individual; **(B)**  a record of such an impairment; or
**(C)**  being regarded as having such an impairment (as described in paragraph (3)).

[12] ROA. RE-7

[13] **(9)**  Reasonable accommodation. The term "reasonable accommodation" may
include--**(B)**  job restructuring, part-time or modified work schedules, reassignment
to a vacant position, acquisition or modification of equipment or devices, appropriate
adjustment or modifications of examinations, training materials or policies, the
provision of qualified readers or interpreters, and other similar accommodations for
individuals with disabilities. 42 U.S.C.S. § 12111.

[14] ROA.605 (testimony of David Miller); ROA.612 (testimony of David Miller)

### 3. **Ms. Spencer is a qualified individual under the ADA.**

Ms. Spencer has a documented mental illness that is well established. In addition, her peers and supervisor noted she was "slow" or learning impaired.[15] In order for Ms. Spencer to prove she was a qualified individual under the ADA, she must be able to perform, with or without reasonable accommodations, the essential functions of the employment positions that she held or desired. 42 U.S.C. §12111(8); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996).[16] Ms. Spencer's evaluations showed that she was able to carry out the essential functions of a MA-I.[17]

### 4. **Kelsey did have a legitimate reason for terminating Spencer.**

Kelsey unlawful termination of Ms. Spencer's employment was not due to any grounds that would be permissible under the business judgment rule. *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688 (5th Cir. 2014). Kelsey puts forth no evidence that reassigning Ms. Spencer to another part of the company would be too expensive or

---

[15] ROA post trial docs by Plaintiff.

[16] **(8)** Qualified individual. The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this title, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job 42 U.S.C.S. § 12111.

[17] ROA. 911-922 (Plaintiff's Exhibits 7-8); ROA.933

cause undue hardship to Kelsey.[18]  For approximately five (5) years Ms. Spencer worked for Kelsey receiving above average evaluations.[19]  It is simply ridiculous and without plausibility that all of a sudden Ms. Spencer was a harm to herself, others or her employer.  Kelsey has put forth no evidence that shows that reassignment would have unduly burdened the company.

### 5. **Procedural History**

Ms. Spencer filed suit in the Southern District of Texas on or about February 3, 2014.  On April 4, 2014, Kelsey filed an answer to Ms. Spencer's petition.  On August 11, 2014, Darrell Jordan ("Jordan") and DaSean Jones ("Jones") filed their notice of appearance for representation of Ms. Spencer.  On April 29, 2015, Kelsey and Ms. Spencer both consented to have this case tried before a Magistrate Judge.

The district court held a two-day bench trial on February 9 and 10, 2016.  The parties filed post-trial briefs on April 15, 2016.  The district court issued its final judgment and finding of facts and conclusion of law on July 19, 2016.[20]  Ms. Spencer filed her notice of appeal on August 17, 2016.

---

[18] ROA. 604-659 (testimony of David Miller)
[19] ROA. 911-922 (Plaintiff's Exhibits 7-8); ROA.933
[20] ROA. RE-7 and 15

## SUMMARY OF THE ARGUMENTS

Ms. Spencer has provided a *prima facie* case for discrimination.  It has been agreed by all parties that Ms. Spencer has a disability.  The evidence and testimony at trial attest that Ms. Spencer is qualified for her job as a MA-I.  The record allows for a reasonable person to infer that her termination decision was the directly tied to her disability.

Kelsey's termination of Ms. Spencer due to her not passing the MA-II exam was nothing more than a pretext to dismiss her for her disability.  Because Kelsey's representative testified to open MA-I positions in other practices, Kelsey's reasoning of Ms. Spencer not passing the MA-II exam is not a nondiscriminatory reason for Ms. Spencer's termination.

Kelsey knew of Ms. Spencer's request for accommodation and failed to engage in a good faith interactive process to accommodate Ms. Spencer's disability.  In addition, Kelsey put forth no evidence or testimony that accommodating Ms. Spencer would unduly burden the company.

## ARGUMENT

### 1.  Did Ms. Spencer Established a *Prima Facie* Case of Discrimination?

### A.  <u>Standard of Review</u>

This Court reviews a district court's conclusion of law *de novo*.  *United States v. Hernandez*, 647 F.3d 216, 218 (5th Cir. Tex. 2011).  A district court's legal

conclusion at a bench trial are reviewed *de novo*. *See Adkins v. Kaspar*, 393 F.3d 559, 563 (5th Cir. 2004).

To prevail under the ADA, Ms. Spencer must show that (1) s*he has a disability*; (2) she is qualified for the job; and (3) Kelsey made its adverse employment decision because of her disability. *See Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242 (5th Cir. 2013).

### B. Ms. Spencer has a Disability within the Meaning of the ADA

Ms. Spencer had a disability under the ADA. Disability is defined under the ADA with respect to an individual as: 1) a physical or mental impairment that substantially limits one or more major life activities of such individual; 2) a record of such an impairment; or 3) being regarded as having such an impairment. [21] *See Rogers v. Int'l Marines Terminal, Inc.,* 87 F.3d 755, 758 (5th Cir. 1996). The ADA considers the learning as a major life activity.[22]

At trial both parties attested to Ms. Spencer having a record of an impairment of a learning disability.[23] Testimony showed that Ms. Spencer underwent electroconvulsive therapy which causes memory impairment.[24] The district court

---

[21] 42 U.S.C. § 12102(1)
[22] 29 C.F.R. § 1630.2 (i)(1)
[23] ROA. 660-676 (testimony of Jorge Raichman); ROA.677-736 (Testimony of Michelle Spencer)
[24] ROA. 663

even noted in its finding of facts and conclusion of law that Ms. Spencer had

disability within the meaning of the ADA. [25]

Ms. Spencer has a disability that is covered by the ADA. All parties where

aware of this disability and the testimonies at trial reaffirmed that Ms. Spencer was

disabled under the ADA.

### C. <u>Ms. Spencer is qualified for the job</u>

Ms. Spencer is qualified for the job of MA-I. Kelsey would need to show

that Ms. Spencer could not with or without reasonable accommodation, perform the

essential functions of the employment position that such individual holds or

desires.[26] *See Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 763

(5th Cir. 1996) quoting *Daughtry v. City of El Paso*, 56 F.3d 695, 696 (5th Cir.

1995); *See also Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1092 (5th Cir.

1996); *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991).

At trial, Ms. Spencer presented evidence that she held her position for more

than ten (10) years. During this period of employment Ms. Spencer performed at or

above a satisfactory level. Additionally, during the trial, Ms. Spencer's counsel

questioned Kelsey's representative as to how merit raises were determined:

> "Q: No, I'm not asking -- my question is, if the 3.5 was
> the maximum increase allowed, what does that say about the

---

[25] ROA.RE-7
[26] 42 U.S.C. § 12111 (8).

employee?

A: I don't know.

Q: Are these increases randomly given?

A: No.

Q: What are they based on?

A: They are based on the merit score.

Q: And explain merit, what is merit?

A: This is the performance appraisal score. This is the performance evaluation that was done which was 3.26, and that meant that the individual met their performance expectations. They were eligible for merit increase.

Q: And so simply being eligible entitles you to the maximum available?

A: No, because the evaluation determines the level of performance. 3.0 is meets expectation. 3.26 is this individual performed just above meeting expectations."[27]

Ms. Spencer presented evidence at trial that her employee job appraisal met or exceeded expectation and actually rose higher from year to year.[28]  Kelsey's assertions that Ms. Spencer could not perform her duties are nonsensical.  If Ms. Spencer could not perform her job duties, then why was she employed for more than ten (10) years and why was she awarded a merit increase in pay several months

---

[27] ROA. 633 (testimony of David Miller)
[28] ROA. 911-922 (Plaintiff's Exhibits 7-8)

before her termination?  The answer is obvious: Ms. Spencer was capable of performing essential function of her employment position.  Kelsey has put forth no evidence that Ms. Spencer could not perform all essential elements of MA-I. Therefore, under the ADA she is qualified for her position.

The testimony and evidence at bar show that Ms. Spencer was capable of performing the essential functions for her employment position of MA-I.  Kelsey's own performance reviews clearly show that Ms. Spencer met or exceeded the expectations of her supervisor.  *See Rizzo v. Children's World Learning Centers, Inc., supra*, 84 F.3d at 763; *Chiari v. City of League City*, *supra*, 920 F.2d at 315.

### D. Kelsey made its adverse employment decision because of Plaintiff's disability

Kelsey's decision to terminate Ms. Spencer's employment was due to her disability.  An adverse employment decision based solely on a person's disability is a violation of the ADA.[29]  *See Rizzo v. Children's World Learning Centers, Inc., supra*, 84 F.3d at 763.  Ms. Spencer can prove discrimination in two ways, direct or indirect or inferential method.  *Id*; *Mooney v. Aramco Services, Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

---

[29] 42 U.S.C. § 12101

Ms. Spencer is a qualified individual with a disability under the ADA. Ms. Spencer was terminated due to her disability, which is a blatant violation of the ADA.[30] At no time during the trial did Kelsey put forth any evidence or testimony that Ms. Spencer could not perform her duties as a MA-I. In fact, the evidence put forth at trial shows that Ms. Spencer was more than capable of performing the duties of a MA-I.[31] Kelsey's stated reason for the termination was that Ms. Spencer could not perform the duties of a MA-II because she could not pass the test for MA-II.[32] In addition, Kelsey stated that it was doing away with the MA-I position in family medicine practice.[33]

However, Kelsey's representative testified that there were other MA-I positions available within the company.

> "Q: And there were other MA-1 positions available in the hospital, correct?
>
> A: Yes, sir, that's correct."[34]

If other MA-I position were available in the company and Ms. Spencer was capable of performing the duties of a MA-I, then Ms. Spencer should have been

---

[30] 42 U.S.C. § 12101
[31] ROA. 911-922 (Plaintiff's Exhibits 7-8)
[32] ROA. 604-659 (testimony of David Miller)
[33] Id.
[34] ROA.612 (testimony of David Miller)

transferred to one of those open MA-I positions.  That fact that there were open MA-I positions is inferential proof that Ms. Spencer was terminated due to her disability and Kelsey does not a legitimate nondiscriminatory reason for the unlawful termination.

The facts of this case closely follows those of *McDonnell Douglas*.  In that case as well as the case at bar, the plaintiff was more than capable of performing the duties for employment.  Those facts are born out through the testimonies and Ms. Spencer's job reviews.[35]  Kelsey has not articulated any nondiscriminatory reason for Ms. Spencer's termination.

Kelsey unlawfully terminated Ms. Spencer's employment due to her disability.  Under the *McDonnell Douglas* framework, Kelsey bears the burden of proof of establishing that Ms. Spencer was not terminated due to her disability. Kelsey has not put forth any proof that Ms. Spencer could not perform the duties of a MA-I.  Therefore, the assertions that they were doing away with the MA-I position has no value as evidence of a nondiscriminatory reason for Ms. Spencer's termination.  In fact, Kelsey's employees testified that there were other open MA-I positions available.[36]

---

[35] ROA. 911-922 (Plaintiff's Exhibits 7-8)
[36] ROA.612 (testimony of David Miller)

**2.   Was Kelsey's Reasons for Terminating Ms. Spencer just a Pretext?**

**A**.   <u>Standard of Review</u>

A district court's legal conclusion at a bench trial are reviewed *de novo*.  *See Adkins v. Kaspar*, *supra*, 393 F.3d at 563.  Discrimination does not need to be the sole causation of the employee's termination or adverse employment decision.  It must just play a role in the employer's decision making process.[37]  *See Pinkerton v. Spellings*, 529 F.3d 513 (5th Cir. 2008); *EEOC v. DYNMCDERMOTT Petroleum Operations Co.*, 537 F. App'x 437 (5th Cir. 2013)*.*

**B.   <u>Kelsey Produced no Legitimate Nondiscriminatory Reason for Ms. Spencer's Termination</u>**

Kelsey terminated Ms. Spencer's employment due to her disability.  Kelsey would be allowed to terminate Ms. Spencer if the cost of accommodation is too expensive or would cause undue hardship on Kelsey.[38]  *See EEOC v. LHC Grp., Inc.*, *supra*.

Kelsey's reason for the adverse employment decision concerning Ms. Spencer is that she could not pass the MA-II test and they were eliminating the MA-I position

---

[37] 29 U.S.C.S. § 791
[38] 42 U.S.C. § 12112 (b)(5)(A)

from the Family Medical Practice.[39]   However, Kelsey's representative at trial was specifically asked if there were other MA-I position within the company.[40]

> "Q: Okay, and just for clarification, does the MA-1 position still exist at Kelsey?
>
> A: There are MA-1 positions in the specialty areas. That would be orthopedics. That would be maybe cardiology, those areas in which more higher level of care is required, typically, more invasive surgeries or invasive procedures."[41]
>
> "Q: And there were other MA-1 positions available in the hospital, correct?
>
> A: Yes, sir, that's correct."[42]

The testimony of Kelsey's representative proves that Kelsey's purported reason for Ms. Spencer's termination was indeed false.  Ms. Spencer could have and should have been moved to one of the other MA-I positions within the organization.

Ms. Spencer made Kelsey aware of her disability.[43]  Once Kelsey was aware of Ms. Spencer's disability they were legally obligated to engage in a good faith interactive process to find the best means of accommodating Ms. Spencer.  *See EEOC v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 622 (5th Cir. 2009).  Such

---

[39] ROA. 604-659 (testimony of David Miller)
[40] ROA.605 (testimony of David Miller)
[41] Id
[42] ROA.612 (testimony of David Miller)
[43] ROA. 905-910 (Plaintiff's Exhibits 1-6)

accommodations should have resulted in Ms. Spencer being transferred to another open MA-I position rather than being unlawfully terminated.

The evidence presented at trial is quite devoid of any acceptable reason for the termination of Ms. Spencer, a qualified individual under the ADA.  Additionally, Kelsey failed to show how Ms. Spencer's failing the test for MA-II was prohibitive to moving Ms. Spencer to another open MA-I position within the company.  Kelsey presented no evidence that transferring Ms. Spencer to another MA-I position was too expensive or would cause Kelsey undue hardship.  Kelsey's reason for the termination of Ms. Spencer therefore was due entirely to her disability and not a legitimate, nondiscriminatory reason.

### 3.  Did Kelsey Fail to Accommodate Ms. Spencer?

### A.  <u>Standard of Review</u>

A district court's legal conclusion at a bench trial are reviewed *de novo*.  *See Adkins v. Kaspar*, *supra*, 393 F.3d at 563.  Once an employee puts an employer on notice of his or her need for accommodation then the parties must work together to find the best means of accommodating the employee's disability. *See EEOC v. Chevron Phillips Chem. Co., supra*, 570 F.3d at 622.

**B**.  **Kelsey Provided no Accommodations for Ms. Spencer**

Kelsey provided no accommodations for Ms. Spencer even though they were aware of her disability.  Furthermore, Kelsey did not even attempt to accommodate Ms. Spencer by moving her to an open MA-I position instead of unlawfully terminating her.  Kelsey was legally obligated to engage in an interactive process to find the best means of accommodating Ms. Spencer's disability.  *See EEOC v. Chevron Phillips Chem. Co., supra*, 570 F.3d at 622; *Taylor v. Principal Fin. Group*, 93 F.3d 155, 165 (5th Cir. 1996).

The evidence and testimony at trial show beyond a doubt that Kelsey was aware of Ms. Spencer's disability.[44]   Yet Kelsey has put forth no evidence or testimony that they accommodated Ms. Spencer to take the test.[45] At trial, Linda Brixey ("Ms. Brixey") testified that she informed Kelsey that Ms. Spencer required an accommodation of a tutor, but Kelsey informed her that they were not going to give Ms. Spencer the test again.[46]

> Q: Okay, and how did you come to the conclusion that she would need accommodations?

---

[44] ROA. 660-676 (testimony of Jorge Raichman); ROA.677-736 (Testimony of Michelle Spencer); ROA. 604-659 (testimony of David Miller); ROA. 905-910 (PL. Exhibits 1-6)

[45] ROA. 785-850 (testimony of Michelle Foster); ROA. 851-866 (testimony of Linda Brixey); ROA. 871-890 (testimony of Brittany Springfield)

[46] ROA. 855-856 (testimony of Linda Brixey)

A: Well, after we had gone over the tests, she became extremely distraught and was crying and was very, very upset, and this where she told me that she had, had ECT, and understanding that ECT can cause some head trauma, basically, that's where that came from, from what she had told me.

Q: Okay, and when you -- who did you make aware that she would need accommodations?

A: This was it. I sent it to Michelle if -- I basically was going with the information I had at that particular time.

Q: So, the email says it went to Michelle Foster?

A: Yes.

Q: Do you know who Ms. Foster who Ms. Foster contacted?

A: About?

Q: About the request for accommodations?

A: No, I have no idea.

Q: Did anyone else ever contact you from -- Ms. Shapiro, no one?

A: For accommodations, no.

Q: As far as your message that was sent out regarding accommodations?

A: Oh, well, basically, the main thing they responded to was whether they were going to retest, and the answer was "No."[47]

---

[47] ROA. 855-856 (testimony of Linda Brixey)

Furthermore, Kelsey's assertion that it accommodated Ms. Spencer by allowing a longer time limit for the exam, is patently false. Ms. Brixey, testified at trial that there was no time limit on the exam she proxies regardless of who is taking it.[48]

> "Q: Did anyone make you aware of a need for special accommodations for Ms. Spencer while testing?
>
> A: No.
>
> Q: So, there was no request for unlimited time?
>
> A: We always give unlimited time when I proctor."[49]

Additionally, the deposition testimonies of individuals who Kelsey claims were supposed to tutor Ms. Spencer, directly contradict Kelsey's assertion that they accommodated Ms. Spencer by providing tutors.

> "Q: Okay. Were you ever informed by anybody from management, supervisor, to help Ms. Spencer learn the information?
>
> A:    No.
>
> Q: Okay. So this was something completely totally informal that you did out of the kindness of your heart, responded to questions from Ms. Spencer about the information on the test?

---

[48] ROA. 865 (testimony of Linda Brixey)
[49] *Id.*

A:    Yes, because it was her responsibility to learn that information by herself.

Q:  Okay.  And were you aware of any disabilities that Ms. Spencer had?

A:    No."[50]

There is no evidence or testimony that Kelsey ever held a discussion about how to accommodate Ms. Spencer's disability.  This alone is proof that Kelsey's actions violated the ADA.  *See EEOC v. Chevron Phillips Chem. Co., supra,* 570 F.3d at 622; *Cutrea v. Bd. Of Supervisors of La. St. Univ.,* 429 F.3d 108, 113 (5th Cir. 2005).

Furthermore, accommodations can take the form of an adjustment to her work environment. *See EEOC v. Chevron Phillips Chem. Co., supra*, 570 F.3d at 622.  This could be accomplished by moving Ms. Spencer to another practice that employed MA-Is.  The trial testimonies of Kelsey's representatives indicated there where open MA-I positions available for Ms. Spencer.[51]

Kelsey has failed to provide any accommodations for Ms. Spencer's disability.  Contrary to Kelsey's assertion, the evidence presented at trial through testimony and exhibits, shows that even after Kelsey was notified of Ms. Spencer's

---

[50] ROA.1131 (deposition of Kennosa Gunn)
[51] ROA.605 (testimony of David Miller); ROA.612 (testimony of David Miller)

request for accommodation, no meaningful dialog occurred to address Ms. Spencer's request. Additionally, the direct testimonies of Kelsey's representatives show that there were other MA-Is positions that Ms. Spencer could have been placed instead unlawfully being terminated.

## CONCLUSION AND PRAYER

Ms. Spencer is a qualified individual under the ADA. Ms. Spencer had a disability and that disability was conveyed to Kelsey. Evaluations of Ms. Spencer show that she was more than capable of performing all the necessary tasks of a MA-I. Kelsey unlawfully terminated Ms. Spencer's employment without providing any accommodations even though there were open MA-I positions available in other practices. This Court should reverse the judgment of the district court and remand with instructions that a judgment be entered for Ms. Spencer and against Kelsey.

Wednesday, October 26, 2016                Respectfully Submitted

                                           /s/ Alex L. Davis III

                                           Alex L. Davis III
                                           Texas State Bar No. 24043294
                                           3102 Maple Avenue, Suite 400
                                           Dallas, Texas   75201
                                           adavis@a-dfirm.com – E-mail
                                           (214)450-6447 – Phone
                                           (214)481-1271 – Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to accept electronic service, will be notified of the filing of foregoing Brief of Appellant Michelle Spencer via the Court's CM/ECF system.

Dated:  Wednesday, October 26, 2016          /s/ Alex L. Davis III_____
                                             Alex L. Davis III

## ECF CERTIFICATION

I hereby certify that (i) the required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; (iii) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses; and (iv) the paper document will be maintained for three years after the mandate or order closing the case issues.

Dated:  Wednesday, October 26, 2016          /s/Alex L. Davis III_____
                                             Alex L. Davis III

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that Spencer's brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced type-face using a 14-point plain, roman type-style.  Spencer's brief also complies with the type-volume limitation of Fed. R. Civ. P. 32(a)(7)(B) because it contains 4,141 words, excluding any sections exempt under Fed. R. App. P. 32(a)(7)(B)(iii).

Dated:  Wednesday, October 26, 2016          /s/ Alex L. Davis III_____
                                                                       Alex L. Davis III